# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN CLAUDIA S.,[1] <br>     **Plaintiff,** <br>   v. <br> ANDREW M. SAUL, Commissioner of Social Security, <br>     **Defendant.** | NO. CV 20-6918-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Carmen S. ("Plaintiff") filed a Complaint on July 31, 2020, seeking review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). On August 18, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 11, 12.) On June 30, 2021, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 22.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

further proceedings. (Joint Stip. at 32.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.*) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 18, 2017, Plaintiff, who was born on January 15, 1969, protectively filed applications for SSI and DIB.[2] (*See* Joint Stip. at 2; Administrative Record ("AR") 18, 198-211.) Plaintiff alleged disability commencing January 1, 2015, due to: "strokes, diabetes, sclerosis spine, carpal tunnel, nerve pain on feet, acid reflux, depression, damaged eye caused by diabetes." (AR 199, 245.) Plaintiff previously worked as a teacher aide I (Dictionary of Occupational Titles ("DOT") 099.327-010) and a merchandise deliverer (DOT 299.477-010). (AR 31, 63-64; *see also id.* 247.) The Commissioner denied Plaintiff's applications initially (AR 18, 106-07), and, on December 28, 2107, Plaintiff requested a hearing (*id.* at 116). On May 29, 2019, Administrative Law Judge Paul Coulter (the "ALJ") held a hearing. (*Id.* 40.) Plaintiff, who was represented by counsel, Steven Gollub, a medical expert (the "ME"), and Kristan Cicero, a vocational expert (the "VE"), testified at the hearing. (*Id.* 40-67.) On June 12, 2019, the ALJ issued an unfavorable decision, denying Plaintiff's applications for SSI and DIB. (*Id.* 18-33.) On June 8, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-5)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (AR 20.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2015. (AR 20.) The ALJ

---

[2] Plaintiff was 45 years old on the alleged onset date and thus met the agency's definition of a younger person. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She subsequently changed age categories, and now, at age 52, she is classified as a person "closely approaching advanced age." (Joint Stip. at 2); *see also* 20 C.F.R. §§ 404.1563(d), 416.963(d).

determined that Plaintiff had the following severe impairments: "diabetes mellitus with diabetic retinopathy and neuropathy; hypertension; dizziness/vertigo/labyrinthitis; left carpal tunnel syndrome; degenerative disease; left hip bursitis; obesity; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and borderline to low average range intellectual functioning." (AR 20.) After specifically considering listings 1.00 (regarding the musculoskeletal system), 4.00 (regarding the cardiovascular system), 9.00 (regarding endocrine disorders), and 11.00 (regarding the neurological system), the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 21-24.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work[3] in accordance with the following limitations:

> [S]he can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand/walk for about 6 hours out of 8; sit for about 6 hours out of 8; occasional postural activities; frequent reaching, handling, and fingering; no unprotected heights, no hazardous mechanical devices; no extreme temperatures; avoid concentrated exposure to vibrations; can understand, remember, and carry out simple job instructions; can maintain attention and concentration to perform non-complex routine tasks in a work environment free of fast-paced production requirements; can have occasional interaction with coworkers and supervisors, and no direct interaction with the general public; and can work in an environment with occasional changes to the work setting.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567, 416.967.

(AR 24.)

The ALJ found that Plaintiff was unable to perform her past relevant work. (AR 31.) However, he also found that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of cleaner (DOT 323.687-014), marker (DOT 209.587-034), and routing clerk (DOT 222.687-022). (AR 32.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date of January 1, 2015 through the date of his decision. (AR 33.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Ahearn v. Saul*, 988 F.3d 1111, 1115, 1116 (9th Cir. 2021); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," but less than a preponderance: it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "The ALJ is responsible for determining credibility,

4

resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn*, 988 F.3d at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Ahearn*, 988 F.3d at 1115-16; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error—that is, if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

There are two issues in dispute: (1) whether the ALJ properly determined that Plaintiff had no medically required use of a walker; and (2) whether the ALJ properly considered the consultative examiner's opinion regarding Plaintiff's inability to handle stress. (Joint Stip. at 11.)

**I.  Issue 1: The ALJ's Determination that Plaintiff Had No Medically Required Use of a Walker**

**A. Arguments of the Parties**

Plaintiff's first contention is that the ALJ's determination that Plaintiff did not require a hand-held assistive device for mobility—namely, a walker—is not supported by substantial evidence in the record. (Joint Stip. at 13.) Plaintiff further contends that the ALJ failed to

properly develop the record regarding Plaintiff's need for the walker and should have recontacted the physician who prescribed the walker if the record was inadequate or ambiguous. (*See* Joint Stip. at 15) (citing, *inter alia*, *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

Defendant asserts that the ALJ's determination that Plaintiff did not require a walker is supported by substantial evidence in the record. (Joint Stip. at 16.) Defendant also asserts that, in contravention of Social Security Ruling ("SSR") 96-9p, Plaintiff identifies no documentation to support her claim that her walker was medically required. (Joint Stip. at 17.)

In her Reply, however, Plaintiff points to notes from Dr. Elias Ayoub, an ear, nose, and throat ("ENT") specialist, in which Dr. Ayoub advised Plaintiff "to use walker" due to her complaints of dizziness. (Joint Stip. at 19.) Plaintiff reiterates that, if the ALJ could not decipher Dr. Ayoub's note(s), the ALJ "should have reached out to Dr. Ayoub to ascertain whether there is a need for a walker." (Joint Stip. at 19.)

### B. Applicable Law

At step four of the sequential analysis, claimants bear the burden of showing that they can no longer perform their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Although the burden lies with the claimant, the ALJ must make specific findings regarding the plaintiff's residual functional capacity—that is, what she can still do despite her physical, mental, nonexertional, and other limitations. *See id.* at 845; *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Ultimately, an ALJ must include a limitation or restriction in a claimant's RFC—and in the hypothetical posed to the VE—where the record provides substantial evidence of the limitation. *See Taylor v. Commissioner*, 659 F.3d 1228, 1235 (9th Cir. 2011); *Palomares v. Astrue*, 887 F. Supp.2d 906, 919 (N.D. Cal. 2012); *Brinks v. Comm'r*

*SSA*, 343 Fed. Appx. 211, 212 (9th Cir. 2009); *Dupree v. Astrue*, No. CV 10-3146-JCG, 2011 WL 651886 (C.D. Cal. Feb. 10, 2011). However, "[w]hen there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted).

In the specific context of a hand-held assistive device, SSR 96-6p provides that, for the Commissioner to find that the device is "medically required," "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-6p. Social Security Rulings do not have the force of law but constitute the agency's interpretations of the statute it administers and its own regulations and, as such, are binding upon the agency. *Brown-Hunter*, 806 F.3d at 493; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 n. 1 (9th Cir. 2001); *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996).

**C. Discussion**

The critical question is whether Plaintiff's use of a walker met the agency's definition of "medically required" and, if so, under what circumstances was it "required." As stated above, Plaintiff points to an October 2, 2017 note from Dr. Ayoub, an ENT specialist, which Plaintiff characterizes as advising Plaintiff "to use walker" due to her complaints of dizziness. (Joint Stip. at 19) (citing AR 909). Plaintiff contends that, if the ALJ could not decipher the notation, which is only barely legible, the ALJ had a duty to recontact Dr. Ayoub for clarification. (Joint Stip. at 19.) For the reasons stated below, the Court agrees.

### 1. Relevant Portions of the Administrative Record

Plaintiff's son, Andrew A. Thornton, reported in a June 7, 2017 Adult Function Report that Plaintiff "need[ed] help constantly due to dizziness, falling, and loss of vision." (AR 257.) Plaintiff completed her own Adult Function Report on the same day and similarly reported experiencing "dizz[i]ness to the point where I'm falling down & feel like I'm going to pass out." (AR 265.)

At her August 17, 2017 consultative examination with Dr. Seung Ha Lim, a board eligible internist, Plaintiff reported that she "sometimes gets . . . dizziness." (AR 622.) Dr. Lim observed that Plaintiff had a normal gait and balance and her range of motion in the lower extremities was within normal limits bilaterally. (AR 624, 625.) Dr. Lim stated that Plaintiff "does not require the use of assistive devices for ambulation." (AR 625.)

One month later, on September 29, 2017, Plaintiff saw Dr. Ernest A. Bagner III, a board eligible psychiatrist, for a consultative psychiatric examination. (AR 629-633.) Dr. Bagner noted that Plaintiff "walk[ed] slowly with a walker." (AR 629.) Plaintiff stated that her conditions included dizziness. (AR 629.)

On October 2, 2017, Plaintiff saw Dr. Ayoub, an E.N.T. specialist, for "dizziness with loss of balance." (AR 908-09.) Plaintiff reported having "vertigo off and on for 2 years." (AR 908.) Although difficult to read, some of Dr. Ayoub's writing on the October 2, 2017 treatment note could be construed as directing Plaintiff "to use walker." (AR 909.) The record reflects that Plaintiff continued to see Dr. Ayoub for follow up visits on March 4, 2019, May 23, 2018, September 24, 2018, December 6, 2017, January 17, 2018. (AR 902-04.) However, Dr. Ayoub's notes concerning these visits are entirely illegible. (*Id.*) Included among Dr. Ayoub's treatment notes is the November 24, 2017 letter from Miwako Hisagi, Ph.D., and Sherwin A. Basil, a ASHA certified audiologist and speech-language pathologist with the

Riverview Hearing, Speech & Language Centers, which states that Plaintiff was diagnosed with labyrinthitis, went to the emergency room for severe vertigo in August 15, 2017, and two days after the ER visit had a car accident due to vertigo accompanied by the temporary loss of eyesight. (AR 907.)

On November 16, 2017, during the course of Plaintiff's treatment with Dr. Ayoub, Plaintiff underwent a consultative psychological evaluation with Danita Stewart, a licensed clinical psychologist, who observed that Plaintiff "ambulated with the use of a walker" and "state[d] that she has been using the walker for the past few months due to vertigo." (AR 635, 636.)

One year later, in October 2018 and February 2019, Plaintiff attended appointments with Cardiovascular Medical Associates and was encouraged to exercise for at least 30 minutes 5-6 days per week. (AR 790 (October 5, 2018 appointment), 794 (February 7, 2019 appointment).) There are no references to a walker. (*See generally id.*)

At her November 17, 2018 consultative psychological evaluation with Cyrus Riahi, Ed.S, Ph.D., a clinical psychologist, Plaintiff "was walking using a walker" (AR 727) and reported that she needed help with "walking" (AR 728). Dr. Riahi described Plaintiff's medical history as including a diagnosis for labyrinthitis and vision problems. (AR 728.)

Three days later, at Plaintiff's November 20, 2018 consultative examination with Dr. Soheila Benrazavi, a board-certified Diplomate with the American Board of Internal Medicine, Dr. Benrazavi observed that Plaintiff was able to ambulate without the use of an assistive device. (AR 737.) There is no mention in Dr. Benrazavi's report that Plaintiff came to the examination with an assistive device, reported being prescribed an assistive device, or reported using one in the past. (*See generally id.* 734-738.)

Six months later, at the May 29, 2019 hearing, Plaintiff testified that her labyrinthitis and dizziness prevented her from working because, at least twice a week, she experienced sudden periods of severe vertigo that rendered her blind—sometimes for as long as 45 minutes. (AR 57, 61.) Plaintiff testified that, since approximately September 2017, she had used a walker for ambulation. (AR 49-50.) Plaintiff could not recall which doctor prescribed the walker (AR 50), but she testified that it was either Dr. Asorin or her ENT specialist Dr. Ayoub. (AR 63.) Plaintiff testified that she was prescribed the walker "because of the labyrinthitis because I keep falling," and she explained that the pills prescribed by the ENT specialist for her labyrinthitis were not effective and she had stopped taking them. (AR 50.)

The ME testified at the hearing that there was a November 2017 report for dizziness and that, although Plaintiff's dizziness was "a predominantly a subjective complaint," it was "mentioned more than once" in the treatment notes. (AR 44.) The ME did not propose a limitation to ambulation with the aid of an assistive device. (AR 45.) Instead, he opined that Plaintiff could, *inter alia,* "lift and carry ten pounds frequently and 20 occasionally" and "standing and walking can be done six hours of an eight-hour day" with only occasional balancing. (AR 45.) Plaintiff's counsel asked the ME if he saw any evidence of a need for a walker or a prescription for it. (AR 46.) The ME said that he had not—despite "look[ing] around"— but he "imagined" that, if a walker was prescribed, "it was to address [Plaintiff's] subjective complaint of dizziness." (AR 46.) Neither Plaintiff's counsel nor the ALJ specifically asked the ME about Dr. Ayoub's October 2017 treatment note referring to a walker. (*See generally* AR 43-47.)

### 2. Analysis

"It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, an ALJ has a "duty to fully and fairly develop the record" and "assure that [a] claimant's interests are

considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted). However, because the burden is on the claimant to produce evidence in support of her disability claim, *see Mayes*, 276 F.3d at 459 (as amended), the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011) (citation omitted); *accord Tonapetyan*, 242 F.3d at 1150.

Plaintiff contends that Dr. Ayoub's treatment notes show that the use of a walker was "medically required" due to Plaintiff's recurring dizziness. Plaintiff points to a largely illegible treatment note written by Dr. Ayoub that appears to refer to the use of a walker. Although Plaintiff saw Dr. Ayoub for treatment for several months following the possible prescription of a walker, none of Dr. Ayoub's treatment notes are decipherable. Given that the critical evidence to determining whether, and under what circumstances, a walker was "medically required" is illegible, the record is necessarily inadequate to allow for a proper evaluation of the evidence concerning Plaintiff's impairments. Therefore, the ALJ had a duty to recontact Dr. Ayoub to obtain a legible copy or translation of his treatment notes, and his failure to do so constitutes reversible error. *Cf. Carlson v. Colvin*, No. 215CV01085MJPDWC, 2016 WL 2753913, at *7 (W.D. Wash. Apr. 20, 2016) (ordering that, on remand, the ALJ should determine if the record needs to be further developed given the illegibility of some of the treatment notes), report and recommendation adopted, No. 215CV01085MJPDWC, 2016 WL 2739592 (W.D. Wash. May 11, 2016); *Williams v. Colvin*, No. 15-CV-05352 JRC, 2015 WL 7018742, at *3 (W.D. Wash. Nov. 10, 2015) ("the physician's documentation is illegible and, therefore, inadequate to allow for proper evaluation of the medical evidence"); *Mansour v. Astrue*, No. ED CV 07–851–PLA, 2009 WL 272865, *7 (C.D. Cal. Feb. 2, 2009) (finding that the ALJ's finding that treatment notes were illegible should have triggered the ALJ's duty to seek further development of the record). Further, because the inclusion of a walker in Plaintiff's RFC could have changed the VE's

testimony and/or resulted in a limitation to sedentary work, the ALJ's error is not harmless. Accordingly, the matter must be REMANDED to the ALJ in order to obtain a legible copy or translation of Dr. Ayoub's treatment notes and determine whether Dr. Ayoub provided documentation establishing that a walker was "medically required."

## II. Issue 2: The ALJ's Consideration of the Consultative Examiner's Opinion Regarding Plaintiff's Inability to Handle Stress

### A. Arguments of the Parties

Plaintiff's second argument is that the ALJ improperly disregarded the conclusions of "the consultative examiner"—whom Defendant identifies as psychologist Danita Stewart (Joint Stip. at 27) (citing AR 640)—that Plaintiff would have "a marked inability to deal with the usual stressors of competitive workplace setting" and "would likely manifest repeated episodes of emotional deterioration affecting her functioning in difficult situations and when adjusting to changes in a workplace setting." (Joint Stip. at 21.) Plaintiff states that the ALJ disregarded these conclusions even though they are in line with Plaintiff's mental status examinations. (Joint Stip. at 21-22) (citing AR 548-49, 575, 487-88.) In response, Defendant contends that the ALJ assessed a very restricted RFC that "properly translated the functional limitations with record support" and is supported by the record. (Joint Stip. at 26-28.)

### B. Relevant Portions of the Administrative Record

Plaintiff's alleged onset date is January 1, 2015. The earliest evidence of mental health treatment in the record is a February 21, 2017 mental status exam performed by the Los Angeles County Department of Mental Health ("DMH"). (AR 548-49.) The DMH practitioner described Plaintiff as having impaired intellectual functioning, memory, and concentration, and "minimum" impairment of judgment and insight. (AR 548-49.) Her affect

was sad and worried and her mood was tearful. (AR 548.) Plaintiff reported either having harmed herself or having thoughts of harming herself. (AR 555.) The practitioner set a goal for Plaintiff of cooking a meal for herself at least four times per week. (AR 562.) A subsequent treatment note dated May 9, 2017 stated that Plaintiff experienced nausea and vomiting when she started antidepressants but nevertheless felt "more hopeful" after starting groups and psychotherapy through the DMH. (AR 575.)

On September 29, 2017, Plaintiff underwent a consultative psychiatric examination with Ernest A. Bagner, III, M.D., a board eligible psychiatrist. (AR 629-633.) Dr. Bagner performed a mental status examination and made the following observations: Plaintiff was tearful and cooperative; her speech was normal but emotional; her mood was depressed and anxious with an appropriate affect; Plaintiff could recall 3 out of 3 objects immediately and 2 out of 3 objects in 5 minutes; and, *inter alia*, Plaintiff could perform serial threes but not serial sevens. (AR 631.) Dr. Bagner diagnosed Plaintiff with major depressive disorder and alcohol dependence in full remission. (AR 632.) He assessed a GAF score of 65,[4] indicating mild symptoms and/or mild difficulties in functioning. (AR 632.) He opined that Plaintiff's ability to interact appropriately with the public, co-workers, and supervisors was moderately limited and that Plaintiff's ability to comply with job rules, respond to changes in a routine work setting, and ability to respond to work pressure in a usual work setting was mildly limited. (AR 632.)

On November 16, 2017, two months after Dr. Bagner's examination, Plaintiff underwent a consultative psychological evaluation with licensed clinical psychologist, Danita Stewart. (AR 635-641.) It is Stewart's opinion that is now at issue. In the mental status examination,

---

[4] A GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 34 (revised 4th ed. 2000). The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the fifth edition of the DSM "dropped" the GAF scale. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2012).

13

Stewart reported that Plaintiff was pleasant and cooperative but appeared mildly depressed and was tearful at points. (AR 638.) Stewart reported that Plaintiff's memory was moderately diminished for immediate, intermediate, and remote recall. (AR 639.) Plaintiff's attention and concentration span were also mildly diminished. (AR 639.) Plaintiff's fund of knowledge was low to low average. (AR 639.) Plaintiff's insight and judgment were appropriate. (AR 639.) Stewart diagnosed Plaintiff with the following: major depressive disorder, recurrent, severe; generalized anxiety disorder; and alcohol use disorder, in early remission. (AR 640.) She opined that Plaintiff would be able to understand, remember, and carry out short, simplistic instructions without difficulty and make simplistic work-related decisions without special supervision. (AR 640.) She opined that Plaintiff would be able to interact appropriately with supervisors, coworkers, and peers, maintain attendance, and complete an 8-hour workday in a regular workplace setting. (AR 640.) However, she also opined that Plaintiff "has a marked inability to deal with the usual stressors of competitive workplace setting, given her chronic and severe depression, as well as her anxiety and issues with memory and focus. [Plaintiff] would likely manifest repeated episodes of emotional deterioration affecting her functioning in difficult situations and when adjusting to change in a workplace setting." (AR 640.)

On December 13, 2017, one month after Stewart's examination, Paul Klein, Psy.D., the state agency reviewing psychologist, opined that Plaintiff had no significant limitations in her ability to understand, remember, and carry out very short and simple instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek, and perform at a consistent pace. (AR 83-84.) He opined that Plaintiff was moderately limited, however, in her ability to work with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriate to criticism from supervisors, and get along

with coworkers or peers. (AR 83-84.) He added that Plaintiff "adapts to normal work-related change in most work-like settings." (AR 84.)

On November 17, 2018, one year after Plaintiff's examination by Stewart, Plaintiff underwent a second consultative psychological evaluation—this time with Cyrus Riahi, Ed.S, Ph.D., a clinical psychologist. (AR 727-32.) Plaintiff told Riahi that she was seeing a psychiatrist and taking Trintellix, an antidepressant. (AR 728.) Riahi conducted a mental status examination and observed that Plaintiff's affect was euthymic but Plaintiff described her mood as, "I wish I was never born." (AR 729.) Plaintiff's immediate memory, concentration, attention, and judgment were fair. (AR 729.) On the Wechsler Adult Intelligence Scale (WAIS-IV), Riahi observed that Plaintiff had difficulty with processing speed, which negatively impacted her overall score and resulted in scores in the upper end of the borderline to low average range of intellectual functioning. (AR 730.) On the Beck Depression Inventory, Plaintiff fell in the severe range of depression. (AR 731.) Riahi diagnosed Plaintiff with depressive disorder associated with medical condition and, like Dr. Bagner, assessed a GAF score of 65, indicating mild symptoms and/or mild difficulties in functioning. (AR 732.) Riahi opined that Plaintiff was able to understand, remember, and carry out simple and repetitive instructions, relate with others, and accept supervision. (AR 732.) He further opined that Plaintiff's pace was "slightly slow and she could have moderate problems with pace in fast-paced type of positions." (AR 732.)

Finally, on May 9, 2019, reviewing psychiatrist P. Walls, M.D., completed a second residual functional capacity assessment on behalf of the agency. (AR 920.) He opined that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, complete a normal work-day and workweek without interruptions from psychologically based symptoms, perform at a consistent pace, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers, and respond appropriately to changes in the work setting.

(AR 920-21.) Dr. Walls opined that, in all other areas, Plaintiff had no significant limitation. (*Id.*) He ultimately concluded that Plaintiff could perform the following: "understand instructions"; "maintain CPP to complete simple repetitive 1-2 step tasks;" "tolerate limited contact with public and coworkers"; and "adapt to changes in simple routines." (AR 922.)

### C. ALJ's Decision

The ALJ found that Plaintiff had the following severe mental impairments: major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; and borderline to low average intellectual functioning. (AR 20.) The ALJ concluded that Plaintiff was moderately limited in the following areas: understanding, remembering, or applying information (AR 22); interacting with others (AR 22); concentration, persistence, and pace (AR 23); and adapting or managing herself (AR 23). He stated that he accommodated each of these limitations by restricting Plaintiff to understanding, remembering, and carrying out simple job instructions, occasional interaction with coworkers and supervisors, no direct interaction with the general public, non-complex routine tasks in a work environment free of fast-paced production requirements, and only occasional changes to the work setting. (AR 22-23.) Accordingly, the ALJ ultimately concluded that Plaintiff's mental RFC was the following: "can understand, remember, and carry out simple job instructions; can maintain attention and concentration to perform non-complex routine tasks in a work environment free of fast-paced production requirements; can have occasional interaction with coworkers and supervisors, and no direct interaction with the general public; and can work in an environment with occasional changes to the work setting." (AR 24.)

In support of his assessment, the ALJ summarized the mental status examinations of the consultative examiners, but he did not mention Stewart's opinion that Plaintiff "has a marked inability to deal with the usual stressors of competitive workplace setting" and "would likely manifest repeated episodes of emotional deterioration affecting her functioning in difficult

situations and when adjusting to change in a workplace setting." (*See generally* AR 29; *see also* AR 640.) The ALJ stated that he relied heavily upon the consultative examiners and State agency's functional assessments in formulating the RFC and, when there were discrepancies between the opinions, he generally resolved the inconsistencies in favor of the most recent State agency assessment—Dr. Walls' May 2019 mental RFC assessment—because it was the most up-to-date analysis of Plaintiff's mental functioning and considered evidence that was not available to the consultative examiners and prior State agency consultant. (AR 30.)

### D.  Applicable Law

In determining a claimant's RFC, an ALJ is not required to recite verbatim the opinion of a credited medical source. *Jones v. Astrue*, No. 08-08562-MLG, 2009 WL 4110111, at *2 (C.D. Cal. Nov. 24, 2009); *see also Phillips v. Colvin*, 61 F. Supp.3d 925, 939-40 (N.D. Cal. 2014) (an assessment of moderate limitations does not have to be exactly mirrored in the RFC determination); *Little v. Comm'r of Social Sec.*, 780 F. Supp.2d 1143, 1152-54 (D. Or. 2011) (agreeing with the Commissioner that an ALJ does not necessarily reject a medical opinion simply because he does not adopt the opinion's findings verbatim). Instead, the RFC assessment is the ALJ's translation of the medical evidence, including the medical opinions provided by the treating, examining, and reviewing physicians included in the record.

The Commissioner revised the rules for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). The new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, medical opinions now are evaluated according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20

C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important of these factors are supportability[5] and consistency,[6] and the ALJ need only address the remaining factors when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Because Plaintiff filed her applications in May 2017, her applications are subject to the revised rules, and the Court defers to the new regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g.*, *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'").[7] However, ALJs are still required to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021), report and recommendation adopted, No. 3:19-CV-01773-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021). In sum, the Commissioner must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence. *Titus L. S. v. Saul*, No. 2:20-CV-04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021); *see also Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (citing Linda F. v.

---

[5] Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1).
[6] Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. § 416.920c(c)(2), 416.902(j)(1).
[7] To date, the Ninth Circuit has not yet addressed whether or how the new regulations alter analysis of the adequacy of an ALJ's reasoning. *See Titus L. S. v. Saul*, No. 2:20-CV-04825-AFM, 2021 WL 275927, at *6 (C.D. Cal. Jan. 26, 2021) (citations omitted).

Saul, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020)), report and recommendation adopted, No. 3:19-CV-01773-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021).

**E. Analysis**

The ALJ committed no error with respect to Stewart's opinion because, rather than discounting Stewart's opinion without explanation, he incorporated her assessed restrictions into the RFC. Specifically, in limiting Plaintiff to jobs (1) entailing only "simple" instructions and "non-complex routine tasks" (2) performed in work environments "free of fast-paced production requirements" and (3) involving only "occasional interaction with coworkers and supervisors," no direct interaction with the general public, and only "occasional changes to the work setting," the ALJ limited Plaintiff to work environments in which she was unlikely to face the "usual stressors" of competitive employment, "difficult situations," or "changes in a workplace." Accordingly, although the ALJ would have erred if he had discounted Stewart's opinion without explanation, he, in fact, credited the relevant portions of Stewart's opinion and translated them into functional limitations in his RFC assessment. Therefore, with regards to the ALJ's consideration of Stewart's opinion, the agency's decision is AFFIRMED. However, this conclusion does not alter the Court's earlier determination that reversal and remand is warranted on the basis of the ALJ's failure to obtain and consider a legible copy, or translation, of Dr. Ayoub's notes about Plaintiff's need for a walker.

\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 9, 2021

                                                                                    /s/ Karen L. Stevenson
                                                                                    KAREN L. STEVENSON
                                                                                    UNITED STATES MAGISTRATE JUDGE